Argued and submitted February 29, reversed and remanded June 22, 1988

In the Matter of the Suspension of
the Driving Privileges of

VEILLEUX,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(87-0236C; CA A44413)

756 P2d 70

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for appellant. With her on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steven L. Price, Hillsboro, argued the cause for respondent. With him on the brief was Steve L. Verhulst, Hillsboro.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Motor Vehicles Division (MVD) appeals from a judgment reversing an order suspending petitioner's driving privileges for failing a breath test. ORS 813.410. The court held that there was no substantial evidence in the record that the officer who administered petitioner's breath test complied with the administrative rules governing its administration. The dispositive issue is whether OAR 257-30-020, which provides the procedure for administering Intoxilyzer tests, requires an officer actually to observe the numbers on the digital display of the Intoxilyzer. We hold that it does not and, therefore, reverse.

When petitioner was arrested, she was asked to submit to a chemical breath test and was advised of her rights and of the consequences of the test. ORS 813.100; ORS 813.130. She submitted to the test, which disclosed a .19 percent blood-alcohol level. MVD suspended her license. ORS 813.410(1). Petitioner requested and received an administrative hearing. ORS 813.410(2), (3), (4). She argued that, because the trooper testified that the digital display on the Intoxilyzer was covered while he administered the test and that he did not observe the digital readout, he had not followed the procedure required for administering the test and, therefore, the suspension was invalid. The hearings officer concluded:

"'The rule does not require the operator to observe the digital display. The rule includes both instructive and informative information. The wording of the rule 'The numbers on the digital display will increase and will level off . . .' are more informative than directive in nature."

MVD upheld the suspension order.

Petitioner requested judicial review of the suspension by the circuit court. ORS 813.450(2). The court concluded that MVD's findings regarding compliance with the procedures for admission of the breathalyzer test were in error and that the suspension order was therefore invalid. The court denied MVD's request for reconsideration.[1]

---

[1] At the circuit court hearing, petitioner represented that Washington County District Court judges uniformly rule that covering the Intoxilyzer display violates OAR 257-30-020(1)(c)(F). In its motion for reconsideration, MVD provided a memorandum stating that district court judges no longer were holding that. Circuit court review of MVD's suspension is limited to a review of the record. ORS 813.450(2). The court could not consider the information petitioner provided, and it stated that it refused to take judicial notice of the information. It also denied MVD's motion for reconsideration, which was based on that same kind of information.

ORS 813.160 requires the Intoxilyzer operator to comply with the procedures established by the Department of State Police.[2] Those procedures are set out in OAR 257-30-020, of which section (1)(c)(F) provides:

> "Disconnect the Breath Tube from the Pump Tube. Connect a clean mouthpiece to the Breath Tube. Have the subject inhale and then blow into the Breath Tube, giving as long an expiration as possible with the Breath Pressure Lamp on for the entire time of the expiration. *The numbers on the Digital Display will increase and will level off* when the sample cell is filled with an adequate amount of deep lung breath. After a proper sample is given, the sound of the printer will be heard, automatically printing the letter 'B' for breath, plus the first two digits of the display on the Evidence card. A printout can only occur after the subject stops blowing and the Breath Pressure Lamp is extinguished. If the sound of the printer is not heard, indicating that a printout did not occur after the subject stopped blowing into the Breath Tube, and the Breath Pressure lamp was extinguished; have him blow again, as many times as necessary, until the sound of the printer is heard. Repeated expirations of the subject's breath into the instrument will not affect the accuracy of the test result." (Emphasis supplied.)

That rule establishes certain procedures that must be followed in order to obtain a valid test. The rule states that the operator must do four things: (1) disconnect the breath tube; (2) connect a clean mouthpiece; (3) have the person inhale and then exhale into the tube; and (4) have the person blow again if the printer does not begin printing. The remaining language in the rule merely describes how the machine will function when the procedures are followed. The emphasized language is of that type. It is not mandatory language requiring the operator to do anything. We agree with the hearings officer that the language regarding the digital display is not meant to require the operator constantly to observe the readout.

---

[2] ORS 813.160(1) provides, in relevant part:

"To be valid under ORS 813.300:

"* * * * *

"(b) Chemical analyses of a person's breath shall be performed by an individual possessing a valid permit to perform such analyses issued by the Department of State Police and shall be performed according to methods approved by the Department of State Police."

Petitioner also argues that the checklist that the officer completed required him to observe the printout. OAR 257-30-020(1)(a) requires:

"A check list containing an outline of the approved procedure, name of the subject to be tested, date, and time of the test, name of the person requesting the test and his agency, operator's name, permit number and enforcement agency, location of the test, instrument model and serial numbers, recognition of the 15 minute pre-test requirement, result of test in percent blood alcohol, and operators signature shall be used and completed by all operators of this instrument."

The "Intoxilyzer Operator's Check List" the officer filled out lists the procedures to be followed. He checked off each box, indicating that each procedure was performed. Box F provides, in relevant part:

"The operator disconnected the Breath Tube from the Pump Tube and connected a clean mouthpiece to the Breath Tube. The operator had the subject inhale and then blow into the Breath Tube, giving as long an expiration as possible with the Breath Pressure lamp on for the entire time of the expiration. *The numbers on the Digital Display increased and leveled off* when the sample cell was filled with an adequate amount of deep lung breath. If the sound of the printer was heard, after the subject stopped blowing and the Breath Pressure Lamp was extinguished, the collection of a proper sample and printout of the result was indicated." (Emphasis supplied.)

Petitioner argues that the italicized language required the operator to observe the display, so that he could state that the numbers did indeed increase and level off. MVD argues that the language merely mirrors the language in the rule and is not meant to establish an additional requirement.

OAR 257-30-020(1)(a) requires that a checklist containing an outline of the approved procedure be used in administering the test. The form completed complies with that rule and states the language of OAR 257-30-020(1)(c)(F) in the past tense to agree with the past tense form of the instruction language. It was not meant to add any requirement and could not have. OAR 257-30-020(1)(c)(F) establishes the proper test procedures, which the officer followed.

Reversed and remanded.